**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

| | | |
|---|---|---|
| JAMARR R. STONE, SR., | : | Case No. 2:26-cv-472 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | District Judge Algenon L. Marbley |
| | : | Magistrate Judge Stephanie K. Bowman |
| | : | |
| P. SCHANER, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER AND REPORT AND RECOMMENDATIONS

Plaintiff Jamarr R. Stone, Sr., a prisoner currently incarcerated at the Madison Correctional Institution ("MaCI"), has filed a pro se civil rights complaint in this Court pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff has named the following five Defendants: Corrections Officer P. Schaner, Sergeant S. Reed, Institutional Inspector Z. Gould, and Unit Manager A. Brady with MaCI, and Chief Inspector S. Evans with the Ohio Department of Rehabilitation and Corrections ("ODRC"). (*Id.* at PageID 4; Doc. 1-5, PageID 93-94). Plaintiff also has pending before this Court a motion for a temporary restraining order ("TRO") and preliminary injunction (Doc. 2), and he has filed an affidavit in support (Doc. 3). The docket reflects that Plaintiff paid the required filing fee on April 20, 2026. This case has been referred for certain matters to the Undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and this Court's Amended General Order 22-05.

Because Plaintiff is a prisoner seeking redress from a governmental entity, officer, or employee, his Complaint must be screened to proceed further. 28 U.S.C. § 1915A. As an

initial matter, Plaintiff filed a supplemental attachment (*see* Doc. 1-5), which the Undersigned screens as part of the Complaint (Doc. 1).

For the reasons below, the Undersigned **RECOMMENDS** that Plaintiff's Complaint be **DISMISSED** in its entirety except for his First Amendment retaliation claims against Defendants Schaner and Reed, which **MAY PROCEED** for further development at this juncture.  Plaintiff's unrelated access-to-the-courts claim against Defendant Gould and his Equal Protection and Establishment Clause claims against Defendant Brady are misjoined and should be **DISMISSED without prejudice**.  Additionally, Plaintiff's motion for a TRO and preliminary injunction should be **DENIED without prejudice**.

## I. SCREENING PLAINTIFF'S COMPLAINT

This matter is first before the Court for a sua sponte review of the Complaint (Docs. 1, 1-5) to determine whether the Complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

### A.  Legal Standard

Because Plaintiff is a prisoner who is seeking "redress from a governmental entity or officer or employee of a governmental entity," the Court is required to screen the Complaint to determine whether it, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b) and 1915(e)(2).

A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law.  *Neitzke v. Williams*, 490 U.S. 319, 328-29

2

(1989); *Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990).  An action has no arguable legal basis when the defendant is immune from suit or when a plaintiff claims a violation of a legal interest which clearly does not exist.  *Neitzke*, 490 U.S. at 327.  An action has no arguable factual basis when the allegations are "delusional" or "rise to the level of the irrational or wholly incredible."  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (citations omitted); *Lawler*, 898 F.2d at 1199.  The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness.  *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 327-28).

Congress also has authorized the sua sponte dismissal of complaints that fail to state a claim upon which relief may be granted.  28 U.S.C. § 1915(e)(2)(B)(ii).  A complaint filed by a pro se plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  But the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  *See also Hill*, 630 F.3d at 470-71 (finding that the "dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Although a complaint need not contain "detailed factual allegations," it must provide

3

"more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.  A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

### B.  Allegations in the Complaint

Plaintiff brings this action against the following five Defendants in their individual and official capacities: Corrections Officer P. Schaner, Sergeant S. Reed, Institutional Inspector Z. Gould, and Unit Manager A. Brady, all with MaCI; and Chief Inspector S. Evans with ODRC. (Doc. 1, PageID 4; Doc. 1-5, PageID 93-94).

**Retaliation Claims Against Defendants Schaner and Reed**

Plaintiff first alleges that Defendants Schaner and Reed retaliated against him for filing a complaint with the Ohio Inspector General ("OIG").  (Doc. 1-5, PageID 98).  Plaintiff alleges that Schaner submitted a conduct report against Plaintiff and that Reed enforced arbitrary sanctions against him as retaliation for submitting the OIG complaint.  (*Id.* at PageID 95-98). Plaintiff alleges that Schaner was known to be in a romantic relationship with another MaCI corrections officer, non-defendant Ms. Pope, and he alleges that Schaner, Pope, and Reed were suspected of planting synthetic cannabinoids on inmates at MaCI to help maintain funding for prison programming.  (*Id.* at PageID 94-95).  Plaintiff alleges that he filed the OIG complaint in January 2026, to "stop the mistreatment of [inmates] at Ma.C.I." by Schaner, Pope, and Reed. (*Id.* at PageID 95).

4

Plaintiff alleges that around two weeks after submitting the OIG complaint, other inmates notified Plaintiff that Schaner, Pope, and Reed planned to retaliate against him because they learned about the complaint from other MaCI staff who reviewed Plaintiff's mail.  (*Id.*).  Then, on February 25, 2026, Plaintiff alleges that he "exited his housing unit and traveled to the Ma.C.I. Law Library," when Schaner "stormed in" and handcuffed Plaintiff for being out of place.  (*Id.*).  He alleges that Schaner "dragged" him to the Captain's Office where MaCI Lieutenants Harper and Ruth communicated to Schaner that Plaintiff was allowed in the Law Library at that time.  (*Id.* at PageID 95-96).  While he was permitted to return to the Law Library that evening, Plaintiff alleges that Schaner filed a conduct report against him for "disobeying a direct order, being out of place at the Ma.C.I. Law Library, instigating a fight and or riot, and violating any published ODRC rules."  (*Id.* at PageID 96).

Plaintiff alleges that his brother, Eric Stone, called Lieutenant Ruth about Schaner's retaliatory actions, requesting the conduct report be removed.  (*Id.*).  Plaintiff alleges that he also spoke with Lieutenant Ruth, who advised Plaintiff that the conduct report would be disposed of by Hearing Officer Miramontez.  (*Id.* at PageID 97).  Before that happened, however, he alleges that Reed "broke the chain of command and issued sanctions" based on Schaner's report, which Plaintiff could not appeal.  (*Id.*).  Plaintiff alleges that Reed enforced the sanctions as retaliation for submitting the OIG complaint.  (*Id.* at PageID 95, 98).

### Failure to Act Claims Against Defendants Gould and Evans

Plaintiff next alleges that Defendants Gould and Evans failed to act after finding out about Defendant Schaner's actions. (Doc. 1-5, PageID 99).  Plaintiff alleges that he filed a grievance about Schaner's discriminatory acts and that the grievance was escalated up to Gould and eventually to Evans.  (*Id.* at PageID 96, 99).  Plaintiff alleges that Schaner's retaliatory

conduct report will impact Plaintiff's future job and programming opportunities, and that Gould and Evans failed to act to correct the issue.  (*Id.* at PageID 99).

Plaintiff also alleges that Gould failed to act after Plaintiff filed a grievance on March 9, 2026, advising Gould that MaCI's practices prohibit inmates from making legal copies in the MaCI library.  (*Id.* at PageID 97, 99).  Plaintiff alleges that he informed Gould in person that "these practices were frustrating and impeding his ability to photocopy documents for his upcoming Clark County, Ohio appeal."  (*Id.*).  Plaintiff alleges that Gould's failure to act caused him to miss a filing deadline in his Ohio appeals case and that the limitations on making legal copies interfered with his access to the courts.  (*Id.* at PageID 99, 101).

### Embark Program Claims Against Defendant Brady

Finally, Plaintiff alleges that Defendant Brady discriminated against him by denying Plaintiff's entry into the MaCI Embark Program because of religious bias.  (Doc. 1-5, PageID 100).  Plaintiff alleges that the Embark Program offers housing and other benefits for inmates released on parole, and he alleges that "one or more of these 'Embark Houses' are owned and operated by ODRC investors including Defendant Brady."  (*Id.*).  Plaintiff alleges that in 2025, he sent a request to Brady to be added to the Embark Program waitlist.  (*Id.* at PageID 97).  Plaintiff alleges that he met with Brady within a few weeks of the request, and that Brady denied Plaintiff's request because the Embark Program is "for real Christians only."  (*Id.* at PageID 97, 100).  Plaintiff alleges that he again met with Brady about a month later, when Brady said that "I'll let you in when you drop your Kufi and pick up a Bible."  (*Id.* at PageID 97-98).  Plaintiff alleges that Brady's statement was "demeaning and belittling" toward Plaintiff as a Muslim.  (*Id.* at PageID 98, 100).  Plaintiff alleges that Brady's comments and personal conflict with the Embark Program violates the Equal Protection and Establishment Clauses.  (*Id.* at PageID 100).

Plaintiff seeks monetary damages and any other relief that the Court deems "just, proper, and/or equitable." (*Id.* at PageID 102).

### C. Discussion

The Undersigned understands Plaintiff to be raising the following claims for relief:

1. First Amendment retaliation claims against Defendant Schaner for allegedly filing a retaliatory conduct report and against Defendant Reed for allegedly imposing arbitrary sanctions for that report as retaliation toward Plaintiff for filing an OIG complaint.

2. Failure to investigate claims against Defendants Gould and Evans for allegedly failing to act on Plaintiff's grievance about Defendant Schaner's retaliatory actions.

3. First Amendment access-to-the-courts claim against Defendant Gould for allegedly failing to act after Plaintiff informed him of an issue with making legal copies at MaCI.

4. First Amendment Establishment Clause claim and Fourteenth Amendment Equal Protection claim against Defendant Brady for allegedly discriminating against Plaintiff by denying his participation in the Embark Program because of his religion.

At this stage in the proceedings and without the benefit of additional briefing from the parties, the Undersigned concludes that Plaintiff **MAY PROCEED** to further develop his First Amendment retaliation claims against Defendants Schaner and Reed for allegedly retaliating against Plaintiff for submitting a complaint against Schaner, Reed, and Pope to the OIG. The Court **ADVISES** Plaintiff that this is only a preliminary determination. The Court has not made a determination as to the merits of the claims being allowed to proceed at this juncture, nor has the Court considered any potential defenses. Defendants are not precluded from filing a motion to dismiss, a motion for a more definite statement, or other appropriate motions under the Federal Rules of Civil Procedure. *See, e.g.*, *Wiley v. Austin*, No. 8:20-cv-220, 2020 WL 6204382, at *3 (D. Neb. Oct. 22, 2020).

As explained below, however, Plaintiff's access-to-the-courts claim against Defendant Gould and his Embark Program claims against Defendant Brady are misjoined and should be

**DISMISSED without prejudice**.  Plaintiff's remaining claims are subject to dismissal at this preliminary stage, including his failure to investigate claims against Defendants Gould and Evans and any official capacity claims for monetary relief, for the failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

1. *Official Capacity Claims for Monetary Relief*

Any official capacity claims against Defendants for monetary damages are barred by the Eleventh Amendment of the United States Constitution.  *See Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018).  Absent an express waiver, a state is immune from damage suits under the Eleventh Amendment.  *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 144 (1993) (citations omitted).  The State of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts.  *See Smith v. DeWine*, 476 F. Supp. 3d 635, 652 (S.D. Ohio 2020) (citations omitted); *Johns v. Sup. Ct. of Ohio*, 753 F.2d 524, 526-27 (6th Cir. 1985).

The Eleventh Amendment bar extends to actions where the state is not a named party, but where the action is essentially one for recovery of money from the state.  *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)).  A suit against Defendants in their official capacities would be a way of pleading the action against the entity of which defendants are agents.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)) ("While personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law, individuals sued in their official capacities stand in the shoes of the entity they represent." (internal quotation marks omitted)).  Thus, actions against state officials in their official capacities are included in this bar.

*Maben*, 887 F.3d at 270; *Smith*, 476 F. Supp. 3d at 650-52; *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (quoting *Cady v. Arenac Cnty.*, 574 F.3d 334, 344 (6th Cir. 2009)) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver.").

Plaintiff indicates that he is suing Defendants in their individual and official capacities (Doc. 1-5, PageID 94), and he seeks monetary relief (*id.* at PageID 102).  To the extent that Plaintiff seeks monetary relief against Defendants in their official capacities, such requests are considered claims against the State of Ohio and should be **DISMISSED**.  *Smith*, 476 F. Supp. 3d at 650-51; *Colvin*, 605 F.3d at 289; *Maben*, 887 F.3d at 270.

2.  *Defendants Gould and Evans – Failure to Investigate Claims*

Plaintiff's allegations against Defendants Gould and Evans for failing to act upon his grievance against Defendant Schaner fail to state a plausible claim for relief.  A prisoner has an "undisputed First Amendment right to file grievances against prison officials on his own behalf." *Maben*, 887 F.3d at 564 (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)).  But "there is no inherent constitutional right to an effective prison grievance procedure." *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (collecting cases).  A prison official whose only role "involve[s] the denial of administrative grievances or the failure to act" to remedy the alleged unconstitutional behavior is not liable under § 1983.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citation omitted) ("[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'").  In other words, recovery under 42 U.S.C. § 1983 requires a plaintiff to show that a defendant was personally involved in the alleged constitutional violations and that the defendant engaged in active unconstitutional conduct.  *See Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir.

9

2012) (providing that individual liability under § 1983 attaches only when a defendant is personally involved in unconstitutional conduct); *Shehee*, 199 F.3d at 300 (citation omitted) (requiring active unconstitutional behavior).  Allegations that a prison official failed to investigate a prisoner's grievance or that the prison grievance process failed to produce the right outcome therefore fail to state a plausible claim for relief.

Plaintiff alleges that Gould and Evans failed to act on Plaintiff's grievance about Schaner's retaliatory conduct.  (Doc. 1-5, PageID 96, 99).  But failing to act on an inmate's grievance is insufficient to state a claim upon which relief may be granted.  *See Shehee*, 199 F.3d at 300.  Plaintiff fails to allege any facts to conclude that Gould and Evans engaged in active unconstitutional conduct.  He also fails to allege that Gould and Evans had any personal involvement in Schaner's and Reed's retaliatory conduct.  Plaintiff's allegations against Gould and Evans amount to the mere failure to act and should be **DISMISSED**.

*3. Unrelated Access-to-the-Courts Claims Against Defendant Gould*

Plaintiff also alleges that Defendant Gould failed to act on Plaintiff's reports that MaCI's practices prevent inmates from making a sufficient amount of legal copies.  (Doc. 1-5, PageID 97).  This claim is unrelated to the only other claims proceeding, which are the retaliation claims against Defendants Schaner and Reed.  A plaintiff may not join unrelated claims and various defendants unless the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(g)) ("Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multiple claim, multiple defendant] suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation

10

Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.").  "[T]he proper remedy for . . . misjoinder is to sever the claims against the unrelated parties and dismiss those claims without prejudice." *Cage v. Michigan*, No. 16-cv-11679, 2018 WL 3729062, at *2 (E.D. Mich. Aug. 6, 2018) (citing Fed. R. Civ. P. 21) (additional citation omitted).  Under Rule 21 of the Federal Rules of Civil Procedure, courts have "broad discretion 'to order a severance to avoid causing unreasonable prejudice and expense to the defendant . . . and to avoid great inconvenience in the administration of justice.'" *Proctor v. Applegate*, 661 F. Supp. 2d 743, 781 (E.D. Mich. 2009) (quoting *Nali v. Mich. Dep't of Corrs.*, No. 07-10831, 2007 U.S. Dist. LEXIS 98919, at *5 (E.D. Mich. 2007)).

Plaintiff alleges that Gould failed to act when informed of an issue that inmates faced in making legal copies at MaCI, which inhibited Plaintiff's access to the courts.  (Doc. 1-5, PageID 97, 99).  Plaintiff alleges that he missed a filing deadline in his state appeals case in Clark County, Ohio, because of Gould's inaction in addressing the issue.  (*Id.*).  These allegations do not relate to the allegations about Schaner and Reed retaliating against Plaintiff for filing the OIG complaint.  In other words, the claim that Gould's inaction interfered with Plaintiff's access to the courts does not share a common question of law or fact to permit joinder in this case.  And Plaintiff's failure to investigate claims against Gould that *are* related to the Schaner and Reed retaliation claims should be dismissed, as explained above.  Because no other claims are proceeding against Gould, Plaintiff's unrelated access-to-the-courts claim against Gould should be **DISMISSED without prejudice**.

4.  *Unrelated Claims Against Defendant Brady are Misjoined*

Similarly, Plaintiff's Fourteenth Amendment Equal Protection claim and his First Amendment Establishment Clause claim against Defendant Brady are misjoined in this action.

As noted above, a plaintiff may not join unrelated claims or defendants that do not arise out of the same transaction or occurrence.  Fed. R. Civ. P. 20(a)(2); *George*, 507 F.3d at 607 (citing 28 U.S.C. § 1915(g)) (finding that unrelated claims should be raised in separate actions).  Plaintiff alleges that Brady discriminated against Plaintiff for being a Muslim by refusing to allow his entry into the Embark Program, and he alleges that Brady violated the Establishment Clause by favoring another religion.  (Doc. 1-5, PageID 97, 100).  Plaintiff also alleges that Brady made discriminatory remarks toward Plaintiff, including that Brady would approve him for the Embark Program if he put down his Kufi and picked up a Bible.  (*Id.* at PageID 97-98, 100).  But Plaintiff makes no attempt to tie these allegations to the basis of this lawsuit—that Defendants Schaner and Reed retaliated against Plaintiff for filing an OIG complaint about them.

Because Plaintiff fails to connect his allegations against Brady to the claims proceeding against Schaner and Reed, any claims against Brady are misjoined here.  Accordingly, Plaintiff's unrelated claims against Brady regarding the Embark Program should be **DISMISSED without prejudice**.

If Plaintiff wishes for the Court to consider any unrelated, misjoined claims, he will need to raise them in a separate action(s), pay the required filing fee or seek leave to proceed *in forma pauperis*, and his allegations must survive the screening stage to proceed further with those claims.  Plaintiff is reminded that he may not join unrelated claims and various defendants unless the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  *See George*, 507 F.3d at 607.

**III. RECOMMENDATION ON TRO AND PRELIMINARY INJUNCTION REQUESTS**

This matter is also before the Court on Plaintiff's pending motion for a TRO and preliminary injunction.  (Doc. 2).  To determine the propriety of Plaintiff's request, the Court must consider four factors: "(1) whether the movant has a 'strong' likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction."  *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (quoting *McPherson v. Mich. High Sch. Athl. Ass'n*, 119 F.3d 453, 459 (6th Cir.1997) (en banc)).  The four factors are not prerequisites but must be balanced as part of a decision to grant or deny injunctive relief.  *Id.*; *Performance Unlimited v. Questar Publishers Inc.*, 52 F.3d 1373, 1381 (6th Cir. 1995).  This same four-factor analysis applies to both a preliminary injunction and a motion for a TRO.  *See Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004).

> Additionally, a TRO may issue without notice only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).  A preliminary injunction, however, may not issue without notice to the adverse parties.  Fed. R. Civ. P. 65(a)(1).  Further, a preliminary injunction is an extraordinary remedy that should be granted only "upon a clear showing that the plaintiff is entitled to such relief" and with proof that the circumstances demand it.  *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (citations omitted); *Leary*, 228 F.3d at 739.  When an injunction is sought by an inmate against state prison officials, the Sixth Circuit

13

has noted that findings of fact in support of any granted relief are "especially critical" since such an order would necessarily intrude "significantly into the prerogatives of state correctional officials." *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438, n. 3 (6th Cir. 1984) ("[W]here state penal institutions are involved, federal courts have a further reason for deference to the appropriate prison authorities").  Courts must also consider whether the purpose behind preliminary injunctions—to preserve the status quo until a trial on the merits can be held—will be served in granting such a request.  *Great Lakes Brewing*, 860 F.3d at 848 (*Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).

The Undersigned recommends against granting the broader TRO and preliminary injunctive relief that Plaintiff seeks at this time.  In conclusory fashion, Plaintiff claims he will suffer irreparable harm but without additional support.  (*See* Doc. 2, PageID 51).  Plaintiff asserts that he previously sought a TRO and preliminary injunction and suffered retaliation from that request in an unrelated case (*id.*), but he has failed to allege any facts to suggest what irreparable harm he faces here.  In balancing the hardship to the parties, Plaintiff contends that Defendants would suffer minimal harm in transferring him to LoCI because it is just across the street from MaCI.  (*Id.* at PageID 51-52).  But as explained in more detail below, granting relief at this juncture would necessarily interfere with state matters and would deem Defendants' actions as improper without providing them with an opportunity to respond.  These factors all weigh against granting the TRO or preliminary injunction.

Plaintiff does assert that he suffered additional retaliation by non-defendant, MaCI Security Threat Group Officer Sandford, who allegedly strip-searched Plaintiff in front on other inmates with a body worn camera on Active mode.  (Doc. 3, PageID 104-05).  He also claims that Sandford referenced Defendant Schaner's conduct report during the search, and that

14

Sandford destroyed Plaintiff's GTL tablet charger and charging port to prevent him from filing grievances. (*Id.* at PageID 105). Though Plaintiff has allegedly faced retaliation and additional obstacles at MaCI, he has still filed a complaint with OIG and has initiated the instant matter, including filing the most recent affidavit about Sandford's conduct, which all lead to a conclusion that the circumstances do not clearly demand relief at this juncture.

Plaintiff further suggests that Defendants would not suffer harm if ordered to "discontinue their limitations on photocopying legal documents at Ma.C.I. and implementing religious bias with regards to institutional programming" because these are already protected rights. (Doc. 2, PageID 52). The broad injunctive relief Plaintiff seeks, however, connects to claims that are not proceeding in this case, including his access-to-the-courts claim against Defendant Gould and his Embark Program claims against Defendant Brady. That factor weighs against granting a TRO or preliminary injunction for these remedies because it does not serve the public interest to entertain requests that do not connect to the basis of the claims proceeding.

As noted, Plaintiff also seeks an institutional transfer from MaCI to LoCI. (*Id.* at PageID 49-51). This request goes beyond maintaining the status quo. *See Great Lakes Brewing*, 860 F.3d at 848; *Southern Milk Sales, Inc. v. Martin*, 924 F.2d 98, 102 (6th Cir. 1991). According to Plaintiff, the present status quo in this case is that he has suffered numerous violations of his constitutional rights, including facing retaliation from Defendants Schaner and Reed while housed at MaCI. The remedy Plaintiff seeks is more than an injunction maintaining the status quo because he seeks an Order from this Court requiring defendants to affirmatively correct constitutional deficiencies not yet proven. Ordering the transfer of a state inmate to a different state institution before Defendants have an opportunity to respond is beyond the scope and

purpose of preliminary injunctive relief.  And transferring Plaintiff from MaCI to LoCI does not maintain the status quo.

Plaintiff seeks the immediate entry of a TRO and preliminary injunction, without demonstrating why Defendants should not have an opportunity to respond.  This request would require the Court to make factual findings regarding Plaintiff's retaliation claims and interfere in state affairs (i.e., ordering Plaintiff's transfer from one state institution to another) before drawing legal conclusions about whether Defendant Schaner's and Defendant Reed's actions were unconstitutional.  Given that findings of fact are "especially critical" when an inmate seeks injunctive relief against prison officials, Defendants should have the opportunity to respond to Plaintiff's allegations before the Court issues relief that would intrude with the innerworkings of state correctional institutions and officials.  *See Glover*, 855 F.2d at 284; *Kendrick*, 740 F.2d at 438 n. 3.  Plaintiff should continue to pursue his claims through the normal litigation process and his motion for a TRO and preliminary injunction should be **DENIED without prejudice**.

## IV. CONCLUSION

Based on the above, Plaintiff **MAY PROCEED** with his First Amendment retaliation claims against Defendants Schaner and Reed at this stage in the proceedings.  Any official capacity claims for monetary damages, however, should be **DISMISSED with prejudice**. Plaintiff's failure to investigate claims against Defendants Gould and Evans fail to state a plausible claim for relief and should be **DISMISSED without prejudice**.  Further, Plaintiff's First Amendment access-to-the-courts claim against Gould and his Fourteenth Amendment Equal Protection and First Amendment Establishment Clause claims against Defendant Brady are misjoined and should be **DISMISSED without prejudice**.  Additionally, Plaintiff's request for TRO and preliminary injunction (*see* Docs. 2, 3) should be **DENIED without prejudice**.

16

**IT IS THEREFORE ORDERED THAT:**

1.  Plaintiff **MAY PROCEED** at this juncture to further develop his First Amendment retaliation claims against Defendants P. Schaner and S. Reed.

2.  The Court notes that Plaintiff has provided the appropriate service documents for Defendants Schaner and Reed.  (*See* Doc. 1-2, PageID 14, 26).  The Clerk of Court is **DIRECTED** to forward copies of the Complaint (Docs. 1, 1-5)[1] and the appropriate service documents to the United States Marshal Service.

3.  Thereafter, the United States Marshal Service is **DIRECTED** to serve copies of the Summons (*see* Doc. 1-3, PageID 44-45, 40-41), the Complaint (Docs. 1, 1-5), and this Order and Report and Recommendations on Defendants Schaner and Reed.  The costs of service shall be advanced by the United States.

4.  Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon Defendants' attorney, a copy of every further pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to Defendants or Defendants' counsel.  Any paper received by a District Judge or Magistrate Judge which has not been filed with the Clerk, or which fails to include a certificate of service, will be disregarded by the Court.

5.  Plaintiff must also keep this Court informed of his current address and promptly file a Notice of New Address should his address change.

**IT IS THEREFORE RECOMMENDED THAT:**

---

[1] It appears that Plaintiff submitted service copies of his Complaint.  (*See* Doc. 1-4, PageID 48).

17

1. The Court **DISMISS without prejudice** Plaintiff's failure to investigate claims against Defendants Gould and Evans for the failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2).

2. The Court **DISMISS with prejudice** Plaintiff's official capacity claims for monetary relief for the failure to state claim upon which relief may be granted.  *See* 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2).

3. The Court **DISMISS without prejudice** Plaintiff's First Amendment access-to-the-courts claim against Gould as misjoined.  *See* Fed. R. Civ. P. 20(a)(2) and 21.

4. The Court **DISMISS without prejudice** Plaintiff's Fourteenth Amendment Equal Protection and First Amendment Establishment Clause claims against Defendant Brady as misjoined.  *See* Fed. R. Civ. P. 20(a)(2) and 21.

5. Because Plaintiff fails to state a plausible claim for relief against Gould, Evans, and Brady, the Court should **DISMISS** them as defendants in this action.

6. The Court **DENY without prejudice** Plaintiff's requests for a TRO and preliminary injunction.

<u>**NOTICE REGARDING OBJECTIONS**</u>

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  *See also Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

       **IT IS SO ORDERED AND RECOMMENDED**.


Date: 06/10/2026                                        *s/Stephanie K. Bowman*
                                                     **STEPHANIE K. BOWMAN**
                                                     **United States Chief Magistrate Judge**